UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES PRESSON, *individually and on behalf of all others similarly situated*,

                 Plaintiff,

     – *against* –

ALAMO INTERMEDIATE II HOLDINGS, LLC,

                Defendant.

<u>**OPINION & ORDER**</u>

24-cv-170 (ER)

Ramos, D.J.:

     James Presson brings this action against Alamo Intermediate II Holdings, LLC ("Alamo"), alleging that they charged him convenience fees when he purchased tickets online in violation of New York Arts & Cultural Affairs Law ("NYACAL") § 25.07(4). Doc. 1. Before the Court is Alamo's motion to compel arbitration pursuant to 9 U.S.C. § 4 or, in the alternative, to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 20. For the reasons set forth below, the motion is DENIED.

**I.    BACKGROUND**

    **A.  Factual Background[1]**

     Alamo operates movie theatres throughout the United States, including in New York City. Doc. 1 ¶ 8. Movie tickets can be purchased on Alamo's website, https://www.drafthouse.com. *Id.* ¶ 7. When a prospective movie-goer visits Alamo's website, "he selects a movie he wishes to view in one of [Alamo]'s theatres." *Id.* ¶ 9. Clicking on one of the film titles redirects the user to the "Showtimes" page. *Id.* ¶ 10. The user is then prompted to select a showtime at a particular theatre location. *Id.*

---

[1] The following facts are drawn from allegations contained in the complaint, Doc. 1, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

After the user makes his selection, the right side of the Showtimes page populates a map of the chosen theatre. *Id.* ¶ 11. The map indicates the available seats. *Id.* When users hover their mouse "over a particular seat, a pop-up appears showing the price of the ticket, excluding any ancillary fees." *Id.* After a user has selected the seats he wishes to purchase, a "NEXT" button appears on the bottom right side of the screen. *Id.* ¶ 12. Clicking on this button redirects the user to the "Checkout" page. *Id.*

The top of the Checkout page invites the user to "review [their] order." *Id.* (figure 5). The review lists the price of the tickets, as was previously displayed in the pop-up on the Showtimes page. *Id.* The review also discloses, for the first time, a "convenience fee of $1.89 per ticket." *Id.* ¶ 13.

The middle of the Checkout page prompts the user to enter their credit card information and email address. *Id.* ¶ 12 (figure 5). Below this is a pre-checked box titled, "Join Alamo Victory." *Id.* The subtitle reads, "By checking 'Join Alamo Victory' you start earning visits with this purchase for rewards and you agree to Alamo Drafthouse Cinema's terms of use." *Id.* Directly below the pre-checked "Join Alamo Victory" box is the "Buy Tickets" button. *Id.* To complete the transaction, a customer inputs the required information and clicks "Buy Tickets." *Id.* ¶ 11–13.

A link to Alamo's "Terms & Conditions" (the "Terms") is located in the bottom right corner of the Checkout page. Doc. 21 at 8. The Terms begin:

> PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE USING THIS SITE. By using this Site, you signify your assent to these terms of use and agree to comply with all applicable laws and regulations, including U.S. export and re-export control laws and regulations. If you do not agree to these terms of use, please do not use the Site. THIS AGREEMENT SHALL BE GOVERNED AND INTERPRETED BY THE INTERNAL LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF.

*Id.* at 5. Section 19 of the Terms is titled "Arbitration" and includes a mandatory arbitration provision:

> All disputes, controversies and claims from or relating to these Terms and Conditions, including any subsequent updates, shall be submitted to arbitration before the American Arbitration Association ("AAA") in accordance with the AAA Commercial Arbitration Rules … By agreeing to this provision, you waive your right to bring, join, or participate in a class action lawsuit related to these Terms and Conditions; however, you do not waive your rights or remedies to pursue an individual claim in binding arbitration … The failure to exercise or enforce any right or provision of this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Alamo Drafthouse Cinema in writing.

*Id.*

On October 28, 2023, Presson purchased a movie ticket through Alamo's website. Doc. 1 ¶ 7. The purchase process was "substantially similar" to that described above. *Id.* As in the process described above, Presson was charged a convenience fee per ticket purchased. *Id.* ¶ 29. Presson subsequently brought suit against Alamo for failure to disclose this convenience fee in violation of NYACAL § 25.07(4), which requires the operator of a place of entertainment to display the total cost of a ticket—including "all ancillary fees"—in "the ticket listing prior to the ticket being selected for purchase."

### B. Procedural History

On January 9, 2024, Presson filed a complaint on behalf of himself and similarly situated individuals. Doc. 1. On June 21, 2024, Alamo filed the instant motion to compel arbitration or, in the alternative, to dismiss the complaint. Doc. 20.

On December 18, 2024, Presson filed a notice of supplemental authority, Doc. 30, advising the Court of *Cammayo v. 1and8, Inc. d/b/a Museum of Ice Cream*, Index No. 150173/2024 (LC) (Sup. Ct. Richmond Cnty. Dec. 9, 2024), in which the court denied the defendant's motion to dismiss the plaintiff's NYACAL claim after finding that the plaintiff's alleged payment of an unlawful fee was a concrete injury sufficient to confer standing and that the voluntary payment doctrine did not apply to bar the plaintiff's claim. *See* Doc. 30-1. Alamo filed a response on December 26, 2024, distinguishing *Cammayo* from the instant action because that "[d]ecision only addresses the defense founded on

3

the common law voluntary payment doctrine" and "does not address any of the other arguments Alamo raised in its motion." Doc. 31.

On January 23, 2025, Presson filed a second notice of supplemental authority. Doc. 33. He advised the Court that in *Vasell v. SeatGeek, Inc.*, No. 24-cv-932 (NCM) (JRC), 2025 WL 240912 (E.D.N.Y. Jan. 17, 2025), the court denied defendant's motion to dismiss for lack of standing because the plaintiff alleged concrete economic injury flowing from defendant's violation of a statutory provision; namely, the payment of a fee made unlawful by the defendant's failure to comply with NYACAL § 25.07(4). Doc. 33-1 at 10. Alamo filed a response on February 5, 2025, distinguishing *Vasell* based on the "clear distinctions between SeatGeek's website and Alamo's website . . . when purchasing tickets." Doc. 35 at 1.

On January 28, 2025, Presson filed a third notice of supplemental authority. Doc. 34. He advised the Court of two separate judicial opinions: *Rodriguez v. Festival Fun Parks, LLC*, No. 24-cv-1245 (NJC) (ARL), 2025 WL 307250 (E.D.N.Y. Jan. 27, 2025) (denying defendant's motion to compel arbitration where the hyperlinked "Terms & Conditions" was not accompanied by language indicating that the "Terms & Conditions" applied to the purchase); and *Berryman v. Reading International, Inc.*, No. 24-cv-750 (PAE), 2025 WL 315403 (S.D.N.Y. Jan. 28, 2025) (denying defendant's motion to dismiss for lack of standing because plaintiff's allegation of paying an unlawful fee qualifies as an economic injury sufficient to give rise to Article III standing). *Id.* Alamo responded on February 10, 2025. Doc. 36. Alamo distinguished *Rodriguez* on the basis of "clear distinctions between Festival's and Alamo's websites . . . when purchasing tickets." *Id.* at 2. Alamo also noted that *Berryman* "provides minimal guidance with respect to Alamo's pending motion." *Id.*

4

## II.  LEGAL STANDARD

### A. Motion to Compel Arbitration

Pursuant to the Federal Arbitration Act ("FAA"), a written agreement to arbitrate disputes is "valid, irrevocable, and enforceable." 9 U.S.C. § 2.  This reflects "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Memorial Hospital. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).  But parties are not required to arbitrate unless they agreed to do so. *Id.*  Thus, before an agreement to arbitrate can be enforced, the court must first determine whether an agreement to arbitrate exists. *Id.*  This question is governed by contract law. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

To form a contract, there must be a mutual manifestation of assent with respect to all material terms. *Id.* at 289.  But "an offeree's manifestation of assent to an offeror's terms looks different for consumer contracts formed online" because, in online transactions, "consumers often proceed without reading the fine print." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023).  As a result, these offerees often lack actual knowledge of the contract terms.  "Courts have ruled that, where there is no evidence that an internet or app user had actual knowledge of the contractual terms, the user will still be bound if (1) a reasonably prudent user would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent through . . . conduct that a reasonable person would understand to constitute assent." *Id.* at 703 (internal quotation marks and citations omitted).

If the Court concludes that the parties agreed to arbitrate, "it should then consider whether the dispute falls within the scope of the arbitration agreement." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Specht v. Netscape*

*Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)).  If the dispute falls within the scope of the arbitration agreement, the "role of the court ends and the matter is one for arbitration."  *Unique Woodworking, Inc. v. N.Y.C. District Council of Carpenters' Pension Fund*, No. 7-cv-1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

As with a motion for summary judgment, on a motion to compel arbitration, the Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits and draws all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74 (internal quotation marks and citations omitted).  "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."  *Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101–102 (2d Cir. 2022) (citation omitted).

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Under Rule 12(b)(1), a court must dismiss an action for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113).  When determining if a federal court has subject matter jurisdiction and standing is challenged on the basis of the pleadings, the Court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [the plaintiff]."  *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation omitted).  However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring this action.  *See Selevan v. New York Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009).  The Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction

6

on a Rule 12(b)(1) motion. *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170.

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks

and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Doe v. N.Y. University*, 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## III.  DISCUSSION

### A.  Motion to Compel Arbitration

Alamo moves to compel arbitration of Presson's claim. Doc. 21 at 6–12. There is no dispute that the Terms include a mandatory arbitration provision, and that Presson's claim fall within the scope of that provision. Doc. 27 at 3. The only question before the Court is whether Presson agreed to the Terms. The Court concludes that he did not.

The requirement that a user unambiguously manifest assent to be bound by the Terms flows from the fact that mutual assent "is the touchstone of contract." *Specht*, 306 F.3d at 29. "[W]here an internet or smartphone user does not explicitly say 'I agree' to the contractual terms, a court must determine whether a reasonably prudent user would understand his or her conduct to constitute assent to those terms." *Edmundson*, 85 F.4th at 704. The Second Circuit has identified "whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms" as a primary consideration in making this determination. *Id.* 703.

Here, the Checkout page warned Presson: "By checking 'Join Alamo Victory' you . . . agree to Alamo Drafthouse Cinema's terms of use." Doc. 21 at 2. But Presson was not required to affirmatively check "Join Alamo Victory"—it was already checked for him. *Id.* Accordingly, Presson did not take any "specific action" that "would constitute assent." *Edmundson*, 85 F.4th at 704; *see also Quamina v. JustAnswer LLC*,

8

721 F. Supp. 3d 1026, 1033 (N.D. Cal. 2024) (finding the plaintiff did not unambiguously manifest assent where the box next to the "I agree to the terms" language was pre-checked).

Alamo argues that Presson nonetheless unambiguously manifested assent to the Terms by clicking "Buy Tickets." Doc. 27 at 2. Such an inference is only appropriate if the Checkout page "clearly warned" him that clicking "Buy Tickets" would constitute assent to certain terms. *Edmundson*, 85 F.4th at 704. *See e.g., Specht*, 306 F.3d at 29–30 ("[A] consumer's clicking on a download button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms."); *Meyer*, 868 F.3d at 80 ("[T]he text on the [interface] not only included a hyperlink to the Terms of Service, but expressly warned the user that by creating an . . . account, the user was agreeing to be bound by the linked terms."). That is not the case here.

The Checkout page warns Presson that checking "Join Alamo Victory" would bind him to the Terms, but says nothing of the consequences of clicking "Buy Tickets." *cf. Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (finding the user was clearly warned "of the consequences of his assenting click" because immediately below the "Sign Up" button was a notice stating, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"). Because the "Buy Tickets" button is in no way connected to the linked Terms, a reasonably prudent user would not understand clicking "Buy Tickets" to constitute agreement to the linked Terms. *See Edmundson*, 85 F.4th at 704.

Alamo has failed to establish that Presson unambiguously manifested assent to the Terms. Accordingly, Presson cannot be bound by the arbitration provision contained therein.

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Alamo moves alternatively to dismiss the complaint for lack of subject matter jurisdiction. Doc. 21 at 14–18. Alamo argues that Presson "does not actually allege that he was harmed by the $1.89 convenience fee, but that the fee was not disclosed early enough in the normal purchase flow." *Id.* at 2. According to Alamo, "[t]his alleged statutory violation, divorced from concrete or downstream harm, does not satisfy the requirements for Article III standing." *Id.*

This argument fails because Presson did allege a concrete injury: the payment of a fee made unlawful by Alamo's failure to disclose it at the outset of the transaction as required by NYACAL § 25.07(4). Doc. 1 ¶ 29. "Such qualifies as a 'pocketbook injury' sufficient to give rise to Article III standing." *Berryman*, 2025 WL 315403, at *6 (collecting cases). Alamo's assertion that the fee was not unlawful is a merits question that has no bearing on the threshold Article III standing inquiry. *Id.*

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

Alamo also moves to dismiss the complaint for failure to state a claim. Doc. 21 at 18–21.

#### 1. *Voluntary Payment Doctrine*

Alamo argues that the voluntary payment doctrine bars Presson's claim. *Id.* at 18. That doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 105 (S.D.N.Y. 2022). Alamo argues that it applies here because Presson was aware of the allegedly unlawful convenience fee when he purchased his ticket. Doc. 21 at 19. The Court disagrees.

The voluntary payment doctrine does not apply when a plaintiff challenges full disclosure by the defendant. *Berryman*, 2025 WL 315403, at *7 (finding voluntary payment doctrine inapplicable where defendant "allegedly omitted the service charge until the final stage of the purchasing process"). Such is the case here, where Presson

10

alleges that Alamo failed to disclose the convenience fee until after he selected the seats for purchase. Doc. 1 ¶ 13, 30. At this stage, the voluntary payment doctrine is not a basis to dismiss the complaint. *cf. Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) (finding that it is premature, before fact discovery, to resolve whether the voluntary payment doctrine defeats NYACAL claim).

### 2. *Violation of the NYACAL*

Alamo further argues that Presson has failed to allege a violation of NYACAL because its website "clearly depicts" the total cost and fees on the Checkout page. Doc. 21 at 21. This argument is unavailing.

The statute requires disclosure of the total cost and fees "*prior* to the ticket being selected for purchase." NYACAL § 25.07(4) (emphasis added). Presson alleges that the convenience fee was disclosed for the first time on the Checkout page—*after* he had selected his tickets for purchase. Doc. 1 ¶¶ 12, 13, 30. He has therefore plausibly alleged that Alamo's website violated the statute. *See Charles v. Color Factory, LLC*, No. 24-cv-322 (JSR), 2024 WL1693236, at *1–3 (claim stated under NYACAL § 25.07(4) where ticket price increased from initial selection to final checkout).

### 3. *Constitutionally Excessive Damages*

Finally, Alamo argues that "the statutory penalty at issue is constitutionally excessive." Doc. 27 at 9. But the assessment of damages is premature when no damages have been awarded. *See, e.g., Georgiou v. Harmon Stores, Inc.*, No. 22-cv-2861 (BMC), 2023 WL 112805, at *6 (E.D.N.Y. Jan. 5, 2023); *In re Scotts EZ Seed Litig.*, No. 12-cv-4727 (VB), 2017 WL 3396433, at *6 (S.D.N.Y. Aug. 8, 2017); *Parker v. Time Warner Entertainment Co.*, L.P., 331 F.3d 13, 22 (2d Cir. 2003). At this juncture, the Court does not pass on the constitutionality of the $50 statutory penalty imposed by the NYACAL.

## IV.  CONCLUSION

For the foregoing reasons, Alamo's motion to compel arbitration or, in the alternative, dismiss is DENIED. The parties are directed to appear for a telephonic initial

11

pretrial conference on April 11, 2025, at 11 a.m. The parties are instructed to call (855) 244-8681, enter access code 2301 087 7354# when prompted, and enter # again when asked to enter the attendee ID number.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

It is SO ORDERED.

Dated:   March 4, 2025
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.